On the Merits.
[3] Mrs. Nannie T. Mulhaupt, deceased, was twice married; the first time to Rinaldo A. Phelps, Sr., some time during the year 1866, and the second, to Otto E. Mulhaupt in 1879. Of the first marriage, there were born three children, to wit, Ruth, Rinaldo A., Jr., and Henry K. Phelps, and whose father died in 1873, leaving little or no estate. The mother qualified as their natural tutrix, and on her marriage to Mulhaupt he became cotutor. Of the second marriage, two children were born, to wit, Joseph T. and Otto P. Mulhaupt. »
In 1886, and prior to the birth of the Mul-haupt children, Joseph Taylor, father of Mrs. Nannie T. Mulhaupt, deceased, and maternal grandfather of all of the plaintiffs and defendants, died in the city of Shreveport, leaving considerable real property, both in the state of Louisiana and in the state of Texas. By last will, after providing certain small special legacies for certain of his children, he bequeathed the residue of his estate to the three Phelps grandchildren above named, and made the said Mrs. Nannie T. Mulhaupt executrix of said will without bond. This will was probated in both states, and on her account as executrix Mrs. Mul-haupt made a claim against her said father’s estate for the sum of $8,000 alleged to have been for expenses, etc., of her said father prior to his death, and was proceeding to have the property in Louisiana sold for its payment. Whereupon, certain other heirs of the said Joseph Taylor appeared and opposed said account and sale upon the ground that said amount was not due or owing to *1087 the executrix, and thereafter a compromise was effected hy which she relinquished the claims of herself and children to certain of the Texas property, and the proceeding in Louisiana was permitted to continue. The sale was made, and portions of the property were bought in by her individually, and others in her name as tutrix for the Phelps minors. That bought in by her as tutrix was as follows:
(1) A two-thirds interest in part of lot 2 of block 58 with improvements thereon; also, lot 16 and part of 15 in block 62, with improvements thereon — all in the city of Shreveport, La.
(2) Also, all of the N. W. % of N. W. % and S. E. *4 of N. W. % and fractional S. W. % of section 12, township 18, range 14, and fractional W. % of N. E. % of section 13, township 18, range 14 west.
That which she bought in her own name was as follows: '
A one-half interest in lot 11, of 10 acres; lot No. 6 in city of Shreveport, La.; the E. y2 of section 13, township 17, range 13, and
S. W. % of section 18, township 17, range 12 west, containing 480 acres.
Thereafter, on April 6, 1880, Mrs. Nannie T. Mulhaupt appeared individually, and authorized by her husband, Otto P. Mulhaupt, and sold to her daughter, Ruth A. Phelps, the property described in item No. 1 above as having been bought by her as tutrix for the Phelps minors, and mentioned in the record as the “Buckalew.property.” The recited consideration was $15 cash, and the assumption of a mortgage in favor of the Shreveport Mutual Building Association for $5,000. On January 25, 1914, Rinaldo A. and Henry K. Phelps and Mrs. Ruth Phelps Smyth conveyed this same property to A. C., W. C., and F. 0. Buckalew.
The property described in item No. 2 above, as having been bought by Mrs. Nannie T. Mulhaupt, as tutrix for the minors Phelps, at the succession sale of her father and their grandfather, and referred to in the record as “the place up the river,” appears to have continued to stand on the record in that manner; but, according to the evidence in'the record, the greater .part of it has caved into the Red river.
The building on lot No. 16 and part of lot 15 in block No. 62, also described in item No. 1, above, and known as the warehouse property or Enders Furniture Factory on the levee, was burned, the insurance, amounting to some $3,000, was collected by Mrs. Nannie T. Mulhaupt, and the land subsequently expropriated by one of the railroads leading into Shreveport, and from which the said Mrs. Mulhaupt also realized another $3,000.
On December 20, 1886, Mrs. Nannie T. Mul-haupt, aided and authorized by her husband, Otto F. Mulhaupt, purchased from Mattie E. and Eva Watson the following described property, to wit:
All that portion of the Northwest quarter of section 11, township 17, range 14, .Caddo parish, La., which lies between the Vicksburg, Shreveport & Pacific Railroad, and the Texas Road (wagon road), containing 100 acres, more or less.
■Thereafter, through various transfers, such as sales for taxes and redemptions therefrom, the said Mrs. Nannie T. Mul-haupt finally caused to be placed in the name of her eldest son, the plaintiff Rinaldo A. Phelps, the property last above described, together with that situated in Bossier parish, amounting to 480 acres, and described in item No. 2 above, as having been purchased by her in her own name at the succession sale of her father, Joseph Taylor.
On May 3, 1900, she caused the said Rinal-do A. Phelps to' transfer the said Bossier parish property to his half-brother, defendant Joseph T. Mulhaupt, for a recited consideration of $3,500 cash. And on October 31, 1901, she likewise caused the said Phelps *1089 to convey to the said Mulhaupt the 100 acres of land which she had bought on December 20, 1S86, lying between the Vicksburg, Shreveport & Pacific Kailroad and the Texas Road; the consideration expressed in the deed being $5,000 cash, and the balance represented by a mortgage for the same amount given by the said Phelps to one Abe Meyer.
As a matter of fact, nothing was paid by Mulhaupt to Phelps for the Bossier parish property, as was admitted in the answers to the interrogatories on facts and articles; neither was the $5,000 cash mentioned in the conveyance of the 100-acre tract paid, and the $5,000 mortgage resting thereon at the time it was placed in his name was subsequently taken up by the execution of another on the same property.
It is these last two pieces of property, that is, the Bossier parish tract of 4S0 acres, and the 100-acre or “Idlewild” place, that the plaintiffs seek, in this suit, to have declared the property of their mother’s succession.
After taking the “Idlewild” place of approximately 100 acres in his name, Joseph T. Mulhaupt sold off some 60 acres thereof, for a total price of $74,000, and there still remains approximately 40 acres unsold. He, together with his brother Otto, also farmed the Bossier parish property, up. to the date of his mother’s death.
The record shows beyond any reasonable doubt that the placing of this property, first in the name of her son Rinaldo A. Phelps, and later in that of the defendant Joseph T. Mulhaupt, was a mere matter of form and for the convenience of the said Mrs. Nannie -T. Mulhaupt; and that it was never intended that it should actually belong to either of them. It was so treated and understood by Mrs. Mulhaupt and all of her heirs, during her lifetime, and, in fact, she continued to remain in possession and control up to the time of her death. The record does not sustain the contention that it was conveyed to J. T. Mulhaupt for the purpose Of'making a partition, but that merely because Rinaldo A. Phelps, in whose name it stood at the time, was about to get married, she wanted it placed in the name of the next oldest son, who was then unmarried and living at home, so that the same could be handled by her more conveniently. Under these circumstances, the paper title which he held was a simulation, pure and simple, and the said property really belonged to her at her death, and thereafter passed to her succession. The judgment of the lower court holding that the Bossier parish property and the Idlewild place belonged to the succession of Mrs. Nannie T. Mulhaupt, and that the defendant Joseph T. Mulhaupt should account for the proceeds of the portion which was sold and for the rents and revenues, was therefore correct.
[4] It is also reasonably clear from the record that the property known as the “Buckalew property” and the “place up the river” purchased in the name of Mrs. Nannie T. Mulhaupt, as tutrix for the minors Ruth A., Rinaldo A., and Henry K. Phelps, at the succession sale of Joseph Taylor, deceased, was paid for by the claim of the said Mrs. Mulhaupt against the estate of her said father, and that she had no power or authority to buy it for her said minor children. The purchase as to them was therefore without authority. R. C. C. 353; Smith’s Heirs v. Johnston, 110 La. 564, 34 South. 677. As a matter of fact, Mrs. Mulhaupt and her said children always treated these two pieces of property as belonging to the said mother, she collecting the rents and revenues, just as in the case of the other property. It is true that she conveyed the “Buckalew property” to her daughter, Ruth, by formal deed in 18S9, but nothing was paid therefor by her said daughter, and the matter at best can be treated in no other way than as a donation; hence collation is due therefor.
*1091 It is stated in plaintiffs’ brief that the "Buekalew property” was acquired by Mrs. Mulhaupt from an entirely different source from that of the other property purchased at the succession sale of her father, but we have been unable to find anything in the record to sustain this assertion.
We conclude, therefore, that the finding of the lower court with respect to the properties which the appellees have asked in their answer to the appeal be stricken from the judgment below was correct.
We know of no better way of disposing of the many claims and counterclaims of the plaintiffs and defendants herein, than to refer them to an administration of the succession of their mother, as was done by the judgment of the district judge.
Eor the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.